Fidelity-Philadelphia Trust Company *v.* Roesch et al

314

Argued March 23, 1939. Before SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*George H. Detweiler,* for appellant.

*Frank A. Bedford, Jr.,* with him *Philip L. Leidy* and *Pepper, Bodine, Stokes & Schoch,* for appellee.

OPINION BY MR. JUSTICE STERN, April 24, 1939:

In 1923 George T. Roesch, owner of a property known as Pine Manor Apartments, in the City of Philadelphia, executed a mortgage thereon securing an issue of bonds in the sum of $225,000, consisting of $160,000 of Class A bonds, which were entitled to priority in payment both as to principal and interest, and $65,000 of Class B bonds. Philadelphia Company for Guaranteeing Mortgages was named as trustee in the mortgage indenture. In 1931 a default occurred in the payment of taxes and the trustee entered into possession of the property. Walter R. Townsend, hereinafter referred to as defendant, acquired title to the premises in 1932. In 1933, Philadelphia Company for Guaranteeing Mortgages went into receivership and resigned as trustee, and in 1936 plaintiff, Fidelity-Philadelphia Trust Company, was appointed its successor. To an account filed on

behalf of the original trustee in 1936 exceptions were taken by defendant; after the hearing of testimony the court approved the account.

The present proceeding is a bill in equity to foreclose the mortgage, numerous defaults having admittedly occurred. Defendant in his answer alleged mismanagement of the property by the trustee and also made claims for certain credits. A hearing was had during the course of which plaintiff presented an account of its operations as successor trustee from the time of its appointment. The learned chancellor entered a decree of foreclosure establishing that the amount due under the mortgage was $263,350.62, and this was affirmed by the court in banc.

Defendant's present appeal is wholly without merit. He insists that, as owner of the property, he was entitled, before the decree of foreclosure was entered, to an accounting from the trustee and the substituted trustee for all income received by them while in possession. As a matter of fact, such accountings were made; with the first, defendant was apparently satisfied at the time; as to the second, he was unable to establish any just complaint.

The mortgage provided that the mortgagor should pay to the trustee $6,000 annually, such payments to be applied to the purchase and cancellation of Class A bonds, and in case it should not be possible to obtain such bonds at par and interest the money was to be invested by the trustee in guaranteed bonds and mortgages to be placed in a sinking fund. Under this provision there was paid to the original trustee during the period from May, 1924, to January, 1931, the sum of $34,500, but instead of retiring Class A bonds to that amount, and without any apparent attempt to procure bonds for cancellation, the trustee from time to time placed in the sinking fund what defendant alleges were "its own 'guaranteed securities' from other issues." Whatever may be said of such transactions, defendant was in no

way harmed by them. All of the $160,000 Class A bonds were subsequently purchased by one Nemez, and he consented to a deduction of $57,010.81 from the principal amount of the bonds, representing the sum of $34,500 with interest at six per cent from the date of each installment payment thereof to the time of the entry of the preliminary decree of foreclosure, thus reducing the amount of principal due on the Class A bond issue to $102,989.19. The only condition of this reduction was that the investments in the sinking fund should be held for the repayment of the credit of $57,010.81, thus making the situation the same, as far as defendant is concerned, as if, instead of placing these investments in the sinking fund, the trustee had properly cancelled Class A bonds with the payments received for that purpose.

Defendant contends that, because Nemez purchased the Class A bonds "flat" and at a sacrifice price, no interest should be allowed on them, whereas the court did allow interest for the six and a half years during which it was in default, amounting to $62,063.30. It is certainly too plain for discussion that the price at which Nemez purchased the bonds from former owners does not concern the owner of the property nor warrant a cancellation of the interest obligation. Nemez agreed to reduce the claim on the principal of the Class A bonds as above stated, but he did not, expressly or inferentially, waive the right to accrued interest.

Philadelphia Company for Guaranteeing Mortgages was not only the original trustee under the mortgage but also, by separate contract, a guarantor to the owners of the bonds of the payment of interest and principal. In pursuance of this obligation it paid to holders of Class A bonds during the years 1931 and 1932, on account of defaulted installments of interest, sums aggregating $14,068.17. Defendant labors under the impression that a credit should now be allowed for that amount. He overlooks the fact that as the money was paid to the bondholders on a collateral contract of guaranty Phila-

delphia Company for Guaranteeing Mortgages is entitled to subrogation, and that the amount still remains unpaid on the mortgage obligation and was therefore properly included in the assessment of damages. On distribution it will, if realized, be paid to Philadelphia Company for Guaranteeing Mortgages and not to the bondholders who have already received it from that company.

It is stated in plaintiff's "Counter-History of the Case" that after the appeal to this court was taken the property was sold at public sale, in pursuance of the terms of the final decree, for the sum of $125,000, that this sale was confirmed by the court, and that there has been no appeal therefrom. Since defendant contests only the amount found to be due in the foreclosure action, and since, even if all his objections were sustained, there would be no possibility of a surplus accruing to him from the amount stated to have been realized at the sale, it would seem obvious that, in any event, he could not hope to derive any practical benefit from the present appeal.

The decree is affirmed at the costs of appellant.